(No. 13954.—Reversed and remanded.)

HERMAN E. PARISH *et al.* Appellants, *vs.* CHARLES P. DEWEY, Trustee, *et al.* Appellees.

*Opinion filed June 22, 1921.*

WILLS—*when residuary devise will not include reversion in fee.* A residuary devise to a trustee of "all the rest, residue and remainder" of the testator's estate, both real and personal, will not include the reversion in fee which remains undisposed of after specific devises with contingent remainders, where it is apparent from the language and purpose of the residuary clause, construed with the other parts of the will, that such was not the testator's intention.

APPEAL from the Circuit Court of Stark county; the Hon. CHARLES V. MILES, Judge, presiding.

J. H. RENNICK, for appellants.

T. W. HOOPES, and F. B. BRIAN, guardian *ad litem,* for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Pethuel Parish died on October 15, 1918. He left a widow, and his heirs were his two sons and four daughters, all of whom were adults, and all, except Herman E., who is a bachelor, were married and had children, some of whom were minors. His estate consisted of several hundred acres of land, town lots in the city of Toulon, (some of which constituted his homestead,) and personal property of the value of about $100,000, and he owed practically nothing. He left a will, which was admitted to probate, by which he devised to his widow his homestead and all the personal

property in and connected with it. He made separate devises to each of his children of separate parts of his real estate for life, with remainder, respectively, to their children or the survivors of them, or in case of the death without issue of any of his children, to the survivors of the testator's children or their heirs. The residue of his estate, which included all his personal property except that in and connected with the homestead and a small amount of real estate not included in the specific devises to his wife and children, was disposed of by the ninth clause of the will, as follows:

"*Ninth*—All the rest, residue and remainder of my estate, real, personal and mixed, wheresoever found and located, I give, devise and bequeath to Charles P. Dewey, as trustee, for the uses and purposes and with powers following, to-wit: Power is hereby given said trustee to sell and convey, in said trustee's discretion, any real estate of which I may die seized and not otherwise disposed of, or of which I may have any interest, title or color of title to, including any and all real estate taken by mortgage, purchase or otherwise by said trustee during the period of trusteeship; hereby granting power for and toward the performance of said will, and giving full and complete effect thereto by the exercise of said trustee's discretion, to bargain, sell, alien, in fee simple or otherwise, all my lands of which I may die seized not disposed of above or conveyed by this will, and to assure the same to any person or persons, and their heirs forever, by every such lawful ways and means as to my said trustee shall seem necessary and fit for such purpose. My trustee is hereby directed, and power is also granted said trustee, to invest the trust funds in high grade securities, secured by real estate, according to his best judgment, and the income from said property I direct that my said trustee shall pay to my beloved wife, Celestine A. Parish, annually, and at the death of my said wife, Celestine A. Parish, I direct that all of the said prop-

erty shall be divided equally among my above mentioned children or the legal heirs thereof, Blanche S. Leitch, William H. Parish, Herman E. Parish, Lucy M. Wallace, Lizzie E. Nelson and Bessie L. Draper; provided, however, that my daughter Blanche S. Leitch shall first pay in to my said trust estate the sum of $1226.67, which shall be a lien on the lands above conveyed to her by this will; that my son Herman E. Parish shall pay in to my said trust estate the sum of $2426.67, which shall be a lien on the land above conveyed to him by this will; that my daughter Lucy M. Wallace shall pay in to my said trust estate the sum of $426.67, which shall be a lien on the lands above conveyed to her by this will; that my daughter Lizzie E. Nelson shall pay in to my said trust estate the sum of $3026.67, which shall be a lien on the lands above conveyed to her by this will; and that in addition to the share of William E. Parish I direct that my trustee shall pay to him at my wife's death the sum of $6333.33, and that in addition to the share of Bessie L. Draper I direct that my trustee shall pay to her at my wife's death the sum of $773.33."

The six heirs and the widow executed a deed reciting the devises to them and conveying to Charles P. Dewey, individually and not as trustee, the reversion in fee only of all the land devised to them. Herman E. Parish then made a quit-claim deed to Dewey, individually and not as trustee, of the land devised to him, reciting the devise to him and the fact that the deed was made for the purpose of conveying a life estate and all interest given to him in the land by the will, for the purpose of merging the life estate in the reversion and thereby extinguishing it and destroying the contingent remainders, and that the deed was one of thirteen deeds by which the contingent remainders created by the will were merged in the fee and destroyed and the land partitioned among the heirs. Thereupon Dewey made a quit-claim deed to Herman E. Parish of the same land, reciting that the deed was not to convey any interest in the

grantor as trustee under the will. Herman E. Parish and the other children of Pethuel Parish, except William H. Parish, together with the widow, then filed a bill in the circuit court of Stark county praying for a construction of the will of Pethuel Parish and a decree that the contingent remainders created by the will had been destroyed and that the title of Herman E. Parish in fee simple to the quarter section of land devised to him be quieted. William H. Parish, all the grandchildren of the testator, and Charles P. Dewey as trustee under the will, were made defendants. A guardian *ad litem* was appointed for the infant defendants and answered for them, and Dewey answered as trustee, admitting the facts alleged but denying the legal conclusion that the reversion in fee pending the vesting of the contingent remainders descended to the heirs of the testator, and averring that the reversion passed to him as trustee under the residuary clause of the will and is now vested in him. Replications were filed, on a hearing the court dismissed the bill for want of equity, and the complainants have appealed.

If the reversion in fee descended to the heirs of Pethuel Parish pending the vesting of the contingent remainders the conveyances destroyed the contingent remainders. (*Bond v. Moore,* 236 Ill. 576; *Brinkerhoff* v. *Butler,* 296 id. 368.) The appellees contend that the fee was devised to Charles P. Dewey as trustee by the ninth clause of the will. Whether it was so devised depends upon the intention of the testator, and his intention is to be ascertained by a construction of that clause. The natural meaning of the words, "all the rest, residue and remainder of my estate, real, personal and mixed, wheresoever found and located, I give, devise and bequeath to Charles P. Dewey, as trustee," includes the fee, and unless they are limited by other words in the will or the circumstances of the devise they would convey the reversion in fee. (*Matthews* v. *Andrews,* 290 Ill. 103.) They are, however, limited not only by the general purpose for

which the trust was created but by the language itself declaring the trust. The directions to the trustee required him to invest the trust funds in high grade securities and pay the income annually to the testator's widow and at her death divide the property equally among the testator's children, provided that Herman and three of the daughters who are named, shall, respectively, pay certain amounts to the trust estate, and that the trustee shall pay these amounts to the other two children in certain proportions, the sums to be paid being declared to be liens on the land "above conveyed to her [or him] by this will," respectively. Almost the entire trust fund consisted of the testator's personal property, amounting to about $100,000, and its sole declared purpose was to produce an income for the benefit of his wife during her lifetime. Power was given to the trustee to sell and convey any real estate of which the testator might die seized and not otherwise disposed of, or to which he had any interest, title or color of title. The purpose of such sale was only to advance the purpose of the trust, to enable the trustee to invest the trust funds in high grade securities which would produce an income. The naked legal title which constituted the reversion was of no value for any such purpose. It was of no value for any purpose because it could never, under any circumstances, vest in possession. It could have no legal effect on the future enjoyment of the land, except that under certain circumstances it might be used to defeat the testator's intention and destroy the operation of his will. The fact that it was of no value would not prevent its passing if included within the terms of the decree, but that fact, together with the fact that it could under no circumstances have any effect except to defeat the testator's will and to prevent the disposition he had made of the land which he had disposed of or conveyed by his will, was proper to be considered as explaining the intention and scope of the residuary clause and showing that the testator had no intention that it should

convey the reversion. The reversion could be conveyed and the testator might have devised it, but the language of the testator indicates that he did not intend to devise it. After stating that power is given the trustee to sell and convey real estate the testator adds, "including any and all real estate taken by mortgage, purchase or otherwise by said trustee during the period of trusteeship," and the fact that the trustee might acquire the title to real estate in this way was the chief occasion for the mention of the power to convey and sell real estate, though there was an inconsiderable portion of the testator's real estate which was also subject to the trust. The testator later expressly excepts all of his lands which he had previously disposed of or conveyed by his will from the power to sell and convey, and later, in making charges against his devisees, his language is that such charges shall be a lien on the lands "above conveyed by this will." It is manifest from the language of the ninth clause that it was not the intention of the testator that the reversion in the land devised to his children should be sold by the trustee, and that when he referred to land "disposed of above or conveyed by this will," he excepted from the trust the land itself included in the devise and not merely the interest or estate devised to his children. The testator had specifically disposed of all the land included in the six devises to his children, so that the reversion was a naked fee which under no circumstances could become a beneficial estate, and he certainly did not intend it to pass under the residuary clause to the trustee, to be disposed of by him. *Brinkerhoff* v. *Butler, supra.*

The decree of the circuit court will be reversed and the cause remanded, with directions to enter a decree in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*